# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 11, 2023

Lyle W. Cayce
Clerk

————————

No. 22-30705
Summary Calendar

————————

Exceptional Dental of Louisiana, L.L.C.; Bam
Management Group, L.L.C.; Affordable Smiles of Baton
Rouge, L.L.C.; Affordable Smiles of Hammond, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

Bankers Insurance Company,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CV-3

———————————————————————

Before King, Higginson, and Willett, *Circuit Judges*.
Per Curiam:[*]

This is a business-interruption coverage dispute arising from the coronavirus pandemic. The plaintiffs are a group of companies that offer dental services via a group of clinics that they own and operate in Louisiana (together, the "Dentists"). Each of the Dentists purchased a separate but

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-30705

identical insurance policy from the defendant, Bankers Insurance Company ("Bankers"). The policies cover losses due to business interruptions that ensue if the Dentists must suspend operations at their clinics due to a "direct physical loss of or damage to property." The Dentists submitted claims for coverage under that provision on March 20, 2020. Bankers refused coverage in a series of denials that ended with a final letter on May 23, 2021.

The Dentists filed this diversity suit in federal district court, seeking declaratory and other relief flowing from their allegation that "Bankers wrongfully and without justification refused to indemnify Plaintiffs for the losses Plaintiffs suffered as a result of the COVID-19 virus and the governmental restrictions that stemmed from the COVID-19 virus." The district court granted summary judgment for Bankers. That court reasoned that our precedent "mandate[s] the conclusion that . . . COVID-19-related business closures—either due to government order or the presence of the virus on covered property—do not give rise to recoverable losses under the Bankers policies."

The Dentists now appeal, arguing that we should reverse because viral contamination can cause a "direct physical loss of or damage to property." In the alternative, they ask us to certify the coverage question to the Supreme Court of Louisiana, or to stay this case until that court addresses the question in a pending but otherwise unrelated case.

On March 17, 2023, the Supreme Court of Louisiana held that a "direct physical loss of or damage to property" occurs only when "the insured's property sustain[s] a physical, meaning tangible or corporeal, loss or damage." *Cajun Conti, LLC v. Certain Underwriters at Lloyd's, London*, 2022-01349 (La. 3/17/23), ____ So.3d____, 2023 WL 2549132, at *3. "The loss or damage must also be direct, not indirect." *Id.* That court then applied these principles to "claims [of] significant income losses due to

2

No. 22-30705

contamination by, and the continued presence of, COVID-19 at [an] insured location." *Id.* at *2. Because the plaintiffs "never repaired, rebuilt or replaced any property that was allegedly lost or damaged," the court held that "COVID-19 did not cause damage or loss that was physical in nature." *Id.* at *5. That holding makes certification unnecessary, and it moots the Dentists' request for a stay pending the Supreme Court of Louisiana's decision.

*Cajun Conti* also refutes the Dentists' view of the merits. The question there was whether contamination from COVID-19 can constitute a "direct physical loss of or damage to property." *Id.* at *1. We have several times ventured an *Erie* guess that the answer is "no." *See, e.g.*, *Coleman E. Adler & Sons, L.L.C. v. Axis Surplus Ins. Co.*, 49 F.4th 894, 897 (5th Cir. 2022); *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 257 (5th Cir. 2022). The Supreme Court of Louisiana has now ratified that guess: "direct physical loss of or damage to property" refers to "tangible or corporeal[] loss or damage." *Cajun Conti*, 2023 WL 2549132, at *3. On the other hand, those words do not refer to the situation in which a "property remain[s] physically intact and functional, needing only to be sanitized." *Id.*

That leaves the Dentists with just one remaining argument. They say that while "direct physical loss of or damage to property" is undefined, their policies *do* define "property damage." "Property damage," in turn, includes "[l]oss of use of tangible property that is not physically injured." Therefore, under the Dentists' policies, "property damage" can occur even in the absence of a physical injury. And if that's true, the Dentists argue, then "direct physical . . . damage to property" can likewise occur even without a physical injury—*Cajun Conti* notwithstanding.

This argument relies on the premise that "property damage" and "direct physical . . . damage to property" are the same thing. But the Dentists offer no argument for why these separate phrases should have the same

3

No. 22-30705

meaning. And indeed, no matter how the policies define the separate term "property damage," *Cajun Conti* holds that "the plain, ordinary and generally prevailing meaning of 'direct physical . . . damage to property' requires the insured's property [to] sustain a physical, meaning tangible or corporeal, . . . damage." *Id.* at *3. Therefore, there is no equivalence between "direct physical . . . damage to property" and "property damage."

Following *Cajun Conti*, and bound by our precedent, we AFFIRM.